IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERRI HIGH, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-2202 |
| | : | |
| EXETER TOWNSHIP SCHOOL | : | |
| DISTRICT | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                              **February 1, 2010**

Stephanie H., a learning disabled child,[1] and her parents ask this Court to find the Exeter

Township School District (District) violated the Individuals with Disabilities Education Act, 42

U.S.C. § 1401 *et seq*. (IDEA) and § 504 of the Rehabilitation Act, 29 U.S.C. § 794, by denying

Stephanie a free and appropriate public education (FAPE) for the 2007-2008 academic year. The

District argues it provided Stephanie with FAPE by formulating an appropriate Individualized

Education Plan (IEP) and providing Stephanie with appropriate special education services. For the

reasons explained below, this Court will grant the District's Motion for Disposition on the

Administrative Record.

**FACTS**

Stephanie H. has dyslexia and learning disabilities in math, writing, and reading. Because

of her learning disabilities, Stephanie is eligible to receive services under the IDEA. From 2005 to

2007, her freshman and sophomore years of high school, Stephanie attended the Janus School, a

private school for students with learning disabilities. Because of a prior settlement between the

---

[1] Although Stephanie is now over the age of majority, because she was 17 during the year at issue,
she will be referred to as a child.

District and Stephanie's parents, the District's IDEA obligations were waived while she attended Janus. In the spring of 2007, the District re-evaluated Stephanie's needs and recommended she attend a District high school for her junior and senior years.

To ensure Stephanie received an appropriate education, the District was required to provide her with an IEP. District representatives, including Wendy Skoczen, the District's assistant supervisor of special education, met with Stephanie in the spring of 2007 to assess her learning disabilities and create her 2007-2008 IEP. The District measured Stephanie's academic levels by using the Woodcock Johnson III Tests of Achievement and other standard tests. These assessments showed Stephanie was reading at a fourth-grade level. Skoczen's involvement with Stephanie's IEP continued during the school year. In addition to the IEP, the District recommended an Extended School Year (ESY) service for Stephanie during the summer of 2007 to acclimate her to the new school, which Stephanie's parents declined.

Stephanie's 2007-2008 IEP set specific goals to address her deficiencies in math, writing and reading. Stephanie's IEP also included goals to improve her speech and language. Because Stephanie was only reading at a fourth-grade level at the end of her tenth-grade year, her initial IEP goal in reading was to be fluent at a fifth-grade level.[2] The fluency goal and grade-level goal were increased in November 2007 to require Stephanie to read at a sixth-grade level.[3]

According to Stephanie's final IEP progress report, she improved in math, writing, and reading after her goals were increased in November. Stephanie's math teacher said she made

---

[2] Stephanie's reading goal was to read a fifth-grade level passage at a rate of 110 words correct per minute and re-tell at least 55 words of the passage.

[3] The revised goal required Stephanie to read a sixth-grade level passage at a rate of 127 words per minute and re-tell the passage with 50 percent accuracy.

meaningful progress on her IEP goals during the year.[4]  Hr'g Tr. 278-81, 283.  At the end of the academic year, Stephanie's writing was near collegiate-level,[5] and she earned a score of "proficient" in the Pennsylvania System of School Assessments (PSSAs).  Although Stephanie's reading level was still poor at the end of the school year, her reading improved by at least one grade level.

Under the IDEA, an IEP must include a post-secondary transition plan for students aged 16 and older.  Stephanie's original IEP included a transition plan requiring Stephanie to explore career options, file for accommodations for the Preliminary Scholastic Achievement Test (PSAT) and the Scholastic Achievement Test (SAT),  and practice completing a variety of job applications.  Beginning in fall of 2007, Stephanie met with Nina Owens, the District's transition coordinator, to develop and expand her transition plan.  They continued to meet once or twice a week during the year.  Because the Janus School did not provide transition services for Stephanie, Owens gave Stephanie initial assessments, normally provided to ninth- and tenth-graders, to determine Stephanie's skills and interests.  During her meetings with Owens, Stephanie's math and reading skills were analyzed using the Keys to Work research program, which measures a student's skills, helps identify potential careers, and provides lessons to help the student attain her goals.  Stephanie's IEP was revised in May to include Owen's transition activities summary.

The Keys to Work program revealed Stephanie's interests in education and health-care careers.  Based on these interests, Owens created an internship position for Stephanie in the school's life skills room and arranged for her to shadow a sonography technician.  Because most of the careers

---

[4] Stephanie's grades in algebra were very high.  She received honors in algebra for all four marking periods and a final grade of 100 percent.

[5] This assessment was based on the Reading Area Community College placement test, discussed below.

identified by the Keys to Work tests require post-secondary education, Stephanie expressed her desire to attend college. To help Stephanie achieve this goal, Owens transferred Stephanie to a college-track English class, helped Stephanie apply for the PSAT and the SAT and obtain accommodations for both tests, sent Stephanie to a science and technology career fair and a college fair, and identified specific post-secondary education programs related to her interests. Stephanie also took a placement test at Reading Area Community College (RACC), which showed her writing was "a step away from college level," but that she would need to take remedial math and reading classes before she could enter RACC.[6] Ninety percent of students who enroll at RACC do not place in the placement tests and are required to take remedial classes before admission to collegiate-level classes. Hr'g Tr. 441.

Because Stephanie's parents were concerned with her progress at the District, they arranged for her to undergo several evaluations. In September 2007, Lisa Hain, a psychologist who specializes in learning disabilities, evaluated Stephanie. Hain was concerned Stephanie was six grade levels behind her peers and believed the District was not doing enough to close this achievement gap. One year later, Hain evaluated the progress Stephanie made between August 2007 and November 2008, using the Woodcock Johnson III Tests of Achievement. Stephanie's November 2008 scores showed improvement in 12 of 18 subject areas over her August 2007 tests.[7] Stephanie's abilities were still moderately or mildly impaired, however, in most areas.

To address Stephanie's reading, the Lindamood-Bell Center (Center) tested Stephanie's

---

[6] Students usually take the RACC placement tests in the spring of their senior year.

[7] For example, Stephanie improved by at least 10 points in reading vocabulary, reading comprehension, calculation, math fluency, and math calculation.

abilities in December 2007 and recommended Stephanie receive intensive, one-on-one multi-sensory cognitive instruction at the Center. Stephanie never received instruction there, though she returned to the Center for follow-up testing in March and June of 2008. Although the tests showed Stephanie's reading and comprehension skills were well below those of a typical eleventh-grade student, her abilities in "word attack" significantly increased over six months.[8]

In addition, Stephanie's parents sent her to the Good Shepherd Rehabilitation Hospital to determine whether Stephanie needed assistive technology. Stephanie met with Mary Jane Frick, who concluded Stephanie needed assistive technology in reading and writing. Toward the end of the school year, Frick participated in one of Stephanie's IEP meetings and suggested the District provide Stephanie with assistive technology devices. The District declined this suggestion, as it believed such devices were unnecessary.

After comparing college course requirements with Stephanie's present level of achievement, Stephanie's parents became concerned the District was not adequately preparing her for college. Stephanie's mother requested the District provide Stephanie with Extended School Year (ESY) services for the summer of 2008. However, in March 2008, the IEP Team determined Stephanie was not eligible for ESY services, and notified Stephanie's mother. Stephanie's mother formally objected to this determination in June.

Dissatisfied with the education Stephanie was receiving, Stephanie's parents requested a due process hearing with the District. On March 24, 2009, after a five-day hearing, Special Education

_____

[8] "Word attack" refers to the ability to read an unfamiliar word. According to the Woodcock Reading Mastery Test, Stephanie's word attack score increased from a sixth-grade level in December 2007 to a twelfth-grade level in June 2008. Three different oral reading tests showed Stephanie's reading abilities had also increased.

Hearing Officer Anne L. Carroll concluded the District provided Stephanie with FAPE during the 2007-2008 academic year because she made meaningful progress on her IEP goals, did not require assistive technology, and received appropriate transition services. In addition, Carroll found Plaintiffs did not provide sufficient evidence ESY services were necessary. Finally, Carroll dismissed the § 504 claim, stating Plaintiffs failed to plead this cause of action separately from the IDEA claim.[9]

On May 18, 2009, Plaintiffs filed their complaint in this Court seeking adequate progress monitoring, assistive technology, and compensatory education for Stephanie. The parties have submitted cross-motions for summary judgment and for disposition on the administrative record. This Court heard oral argument on September 17, 2009. This Court finds the District provided an appropriate IEP for Stephanie, Stephanie did not qualify for ESY services, and Plaintiffs did not provide evidence to support a § 504 claim.

**DISCUSSION**

The IDEA imposes an affirmative duty on states accepting certain federal funds to provide FAPE for disabled children. *Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 370 (3d Cir. 2005) (citing 20 U.S.C. § 1412(a)(1)). Under the IDEA, parties dissatisfied with the education provided are entitled to an impartial due process hearing. *Carlisle Area Sch. v. Scott P. ex rel. Bess P.*, 62 F.3d 520, 527 (3d Cir. 1995); 20 U.S.C. § 1415(f). A party may appeal the decision of the hearing officer by filing suit in federal district court. 20 U.S.C. § 1415(i). The district court receives the records of the administrative proceeding, hears additional evidence at either party's request, and,

---

[9] Section 504 prohibits a school district from discriminating against a child based on the child's disability. 29 U.S.C. § 794(a).

basing its decision on the preponderance of the evidence, grants such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(c). Under this standard, the court is required to give "due weight" to the administrative proceeding. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205-06 (1982). The "due weight" requirement has been described as "modified *de novo*" review. *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003). A federal district court reviewing the administrative factfinder's conclusions is required to defer to such factual findings unless the court identifies contrary non-testimonial extrinsic evidence in the record. *Id.*

Plaintiffs assert the Hearing Officer incorrectly determined Stephanie was not denied FAPE during the 2007-2008 school year. Plaintiffs challenge this decision on three grounds, arguing the District denied Stephanie FAPE by: (1) failing to provide Stephanie with an appropriate IEP, (2) wrongfully denying Stephanie ESY services, and (3) violating § 504 of the Rehabilitation Act. Regarding the IEP, Plaintiffs further argue it was insufficient because (a) Stephanie did not make meaningful progress on her IEP goals, (b) the District improperly denied Stephanie assistive technology, and (c) Stephanie's IEP did not include an adequate transition plan. The District argues Stephanie's IEP was appropriate because it was reasonably calculated to allow Stephanie to make meaningful educational progress, which she did without the use of assistive technology. The District also asserts it provided Stephanie with an acceptable transition plan.

Regarding the IEP, Plaintiffs first argue the District denied Stephanie FAPE by failing to provide her with an IEP which would deliver meaningful educational progress for Stephanie. To provide a child with FAPE, a school district must provide "educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction." *S.H.*, 336 F.3d at 264; 20 U.S.C.

§1412(a)(1).

The primary vehicle for implementing FAPE is through an IEP, "a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive."[10]  *S.H.*, 336 F.3d at 264.  The IEP must be "reasonably calculated to enable the child to receive educational benefits."  *Rowley,* 458 U.S. at 206-07.  A child is denied FAPE when her IEP fails to confer some, or more than a *de minimis*, educational benefit.  *M.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 396 (3d Cir. 1996).  An IEP is improperly implemented only if the failure relates to "substantial or significant provisions of the IEP" resulting in denial of a meaningful educational benefit.  *Melissa S. v. Sch. Dist.*, 183 Fed. Appx. 184, 187 (3d Cir. 2006) (citing *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000)).  This gives schools flexibility in implementing IEPs, while holding them accountable for "confer[ring] some education benefit upon the handicapped child."  *Id.*

An IEP need not maximize the potential of a disabled student.  *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999).  The Third Circuit specifically rejects a bright-line standard for determining what level of educational benefit is necessary.  Instead, a district court must consider the intellectual potential of the individual student when making its decision.  *Id.*  In *Derek B. v. Donegal Sch. Dist.*, the court found the failure to make one year's progress in one academic year is not necessarily failure to make meaningful progress.  No. 06-2402 2007, U.S.Dist. LEXIS 2983, at *34 (E.D. Pa. Jan. 16, 2007).  Congress did not intend the IDEA to guarantee a specific outcome,

---

[10] An IEP must include: (1) a statement of the child's levels of academic achievement and functional performance, (2) measurable annual goals, (3) a description of how progress will be measured and when progress reports will be provided, and (4) a statement of the special education services and supplementary aids to be provided.  20 U.S.C. § 1414(d)(1)(A); *see* 34 C.F.R. § 300.320(a).

but to provide a basic level of educational opportunity. *Rowley*, 458 U.S. at 192 (quoting S. Rep. No. 94-168, at 11 (1975)); *Polk v. Centr. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 178 (3d Cir. 1988).

The Hearing Officer found Stephanie made meaningful progress in math, writing, and reading during the 2007-2008 school year. This finding is supported by Stephanie's academic record. Indeed, Plaintiffs' own expert, psychologist Lisa Hain, repeatedly noted Stephanie's progress during the 2007-2008 school year, stating, "[O]nce the academic testing commenced, we could definitely see that there [was] improvement in standard scores." Hr'g Tr. 381.[11] Stephanie made marked academic progress in writing and math. Stephanie's math grades were consistently high and the RACC test showed her writing was one step away from the collegiate level. Although Stephanie's reading level was still poor at the end of the school year, it did improve from a fifth-grade level to a sixth-grade level.

At oral argument on their motion for summary judgment, Plaintiffs conceded Stephanie's progress during the 2007-2008 year was more than trivial. Nonetheless, Plaintiffs argue this progress was not meaningful and the school should have done more to close the reading gap between Stephanie and her peers. While this Court recognizes every parent wants his or her child reading on grade level, I find Stephanie's parents could not have reasonably expected the District to close a six-year gap in her reading ability in one year. Furthermore, the IDEA does not require such a demanding result from public schools. When Stephanie arrived at the District in 2007, she had completed 10 years of education, some of which may have been inadequate. However, only one year

_____

[11] For further statements by Hain reflecting Stephanie's progress, see Hr'g Tr. 342, 345, 347-48, 351, 368-69, 371, 380-81, 388-89, 393-94; Ex. 10, P-29 at 5.

is at issue here, and during that year Stephanie made one year's progress. The parents of a child without a learning disability could expect no more. Because Stephanie made meaningful progress in her IEP goals, this Court finds her IEP provided a meaningful educational benefit, and she was not denied FAPE.

Next, Plaintiffs argue the District denied Stephanie FAPE by failing to provide assistive technology in her IEP. A school district is required to provide a student with assistive technology if "the child's IEP Team determines that the child needs access to those devices in order to receive FAPE." 34 C.F.R. § 300.105(b). Therefore, although assistive technology will almost always be beneficial, a school is only required to provide it if the technology is necessary. Moreover, the failure to provide assistive technology denies a student FAPE only if the student could not obtain a meaningful educational benefit without such technology. *See Melissa S.*, 183 Fed. Appx. at 187. Based on this rule, the Hearing Officer found Plaintiffs had not shown assistive technology was necessary to Stephanie's success.

This Court sees no evidence Stephanie needed access to assistive technology to receive FAPE. Although none of Stephanie's teachers requested Stephanie be provided with assistive technology, the District considered providing such technology and determined Stephanie did not require it. Furthermore, Plaintiffs conceded Stephanie received actual benefits through the services provided by the District, even though those services did not involve assistive technology. Stephanie's progress also shows she received a meaningful educational benefit without assistive technology. Thus, the District was not required to provide Stephanie with assistive technology.[12]

---

[12] Skoczen noted Stephanie received a proficient score in the PSSA writing assessment without such technology.

In their final challenge to the IEP, Plaintiffs argue Stephanie's IEP was deficient because it

contained no transition plan, or, if it did, the transition plan inadequate to prepare Stephanie for

college. The IDEA requires every IEP created for a child aged 16 or older to include appropriate

measurable post-secondary goals based on age-appropriate transition assessments related to training,

education, employment, and independent living skills, as well as corresponding transition services.

20 U.S.C. § 1414(d)(1)(A)(VIII); 34 C.F.R. § 200.320(b). A transition plan is a "set of activities"

based on the student's needs and is created to help the disabled student move from school to post-

school activities. 20 U.S.C. § 1401(34)(B); 34 C.F.R. § 300.43. The Third Circuit has not defined

what amount of transition planning is required in an IEP to ensure FAPE. However, the Third

Circuit did affirm one district court's conclusion a bare transition plan in a child's IEP did not deny

the student FAPE.[13]  *Sinan L. v. Sch. Dist. of Phila.*, No. 06-1342, 2007 U.S. Dist. LEXIS 47665,

at *6, 13, 31 (E.D. Pa. July 2, 2007), *aff'd,* No. 07-3258, 2008 U.S. App. LEXIS 27856 (3d Cir. Sept.

24, 2008).[14]

This Court agrees with the Hearing Officer, finding abundant evidence in the administrative

record of transition activities to show the District provided Stephanie with a transition plan. Owens

met with Stephanie at least 32 times during the year for transition counseling. During the year, the

District provided Stephanie with opportunities to test her interests, including an internship in the

---

[13] In *Sinan*, the Hearing Officer was satisfied the IEP Team considered the transition services
even though the plan was "skeletal," and many sections were blank other than the handwritten
words "not needed at this time." 2007 U.S. District LEXIS 47665, at *13.

[14] The Third Circuit has not addressed whether the lack of a transition plan means denial of
FAPE. In *Sinan*, the district court adopted the Seventh Circuit's assertion that "a school
district's failure to include a transition plan in an IEP is a mere procedural flaw and does not
violate any substantive rights." *Sinan*, 2007 U.S. Dist. LEXIS 47665, at *30 (quoting *Bd. of
Educ. v. Ross*, 486 F.3d 267, 276 (4th Cir. 2007)).

school's life services room and a sonography job-shadowing day. To further prepare Stephanie for college and the work force, the District assisted her with college testing and career fairs.

Failing to show there was no transition plan, Plaintiffs claim instead the IEP was deficient because it failed to state how Stephanie would meet her transition goal of attending college.[15] However, there is no requirement for a transition plan to dictate IEP goals. Unlike the IEP, a transition plan is not a strictly academic plan, but relates to several post-secondary skills, including independent living skills and employment. While it may be ideal if a transition plan influences IEP goals, a newly identified transition goal will not change the ability of a child to progress at a higher rate academically.

Therefore, while the District helped Stephanie realize she wanted to attend college, the District was not required to ensure she was successful in fulfilling this desire. The IDEA is meant to create opportunities for disabled children, not to guarantee a specific result. *Rowley*, 458 U.S. at 192; *Polk*, 853 F.2d at 178. Stephanie was six grade levels behind in reading when she arriving at the District for eleventh grade. It was unreasonable for Stephanie's parents to expect she would be reading at a twelfth-grade level by graduation.

Plaintiffs attempt to refute a six-grade reading increase would be impossible within one year

---

[15] Plaintiffs further argue the transition plan was inadequate because the District did not provide progress monitoring of the transition goals. Plaintiffs' arguments rely on the standard for progress monitoring of the IEP, which is not the standard for a transition plan. Transition plan statutory requirements contain no progress monitoring requirement. An IEP must include a method to measure a child's progress; however, a transition plan must only be updated annually and include measurable goals and corresponding services. *Compare* 20 U.S.C. § 1414(d)(1)(A)(II)-(III) *with* § 1414(d)(1)(A)(VIII). Although the IDEA does not require the District to provide progress reports on the student's transition activities, Stephanie's mother received information from the District about the transition programs and had opportunities to provide input on the transition services.

by arguing Owens should have started the transition planning before Stephanie arrived at Exeter. However, the failure to create a transition plan before Stephanie arrived at the District is not a significant failure which would deny Stephanie a meaningful educational benefit. In the spring of 2007, before Stephanie arrived at the District high school, the District met with Stephanie to assess her in order to create her 2007-2008 IEP. There is nothing to suggest identifying Stephanie's post-secondary goals before the school year began would have affected her ability to make meaningful progress in her classes. Because Stephanie's IEP provided her with a meaningful educational benefit, Stephanie did not require assistive technology, and the District provided an adequate transition plan, the Court finds the District provided Stephanie with FAPE.

As an additional ground for relief in their complaint, Plaintiffs assert the District failed to appropriately determine whether Stephanie was eligible for ESY services.[16] The IDEA requires a school district to provide ESY services "only if a child's IEP Team determines, on an individual basis," such services are necessary for the child to receive FAPE. 34 C.F.R. § 300.106(a)(2). The Pennsylvania Code also provides a lists of factors for the IEP Team to consider when determining if ESY services are necessary. The regulation recommends courts consider the child's potential to regress and the child's ability to recoup information after a school break, among several other factors. 22 Pa. C.S. § 14.132(a)(2). The Hearing Officer found Plaintiffs failed to provide any evidence demonstrating Stephanie had difficulties in the areas for which ESY services are provided.

Stephanie's teachers did not recommended ESY services for summer 2008 because

---

[16] Although Plaintiffs did not address the ESY issue in any of the post-complaint briefs or at oral argument, the Court addresses this issue because Plaintiffs have not expressly abandoned it.

Stephanie made meaningful progress and did not regress over holiday breaks.[17]  Because Plaintiffs

provided no evidence Stephanie was regressing over school breaks or proof of any other factor which

would make her eligible for ESY services, the District did not err in deciding she did not require

ESY services.

Finally, Plaintiffs argue the District violated § 504 of the Rehabilitation Act by denying

Stephanie FAPE.  The District asserts Plaintiffs failed to provide any evidence of discrimination

against Stephanie so as to create liability under § 504.  Further, it asserts the issue is moot because

Stephanie was eligible for an IEP under IDEA.

The IDEA and § 504 are similar causes of action.  While the IDEA imposes an affirmative

duty on states which accept certain federal funds, Section 504 is a prohibition against disability

discrimination in federally funded programs.  *See* 29 U.S.C. § 794(a) ("No otherwise qualified

individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance.").

To establish a violation of § 504, a plaintiff must demonstrate (1) she is disabled as defined

by the Act; (2) she is "otherwise qualified" to participate in school activities; (3) the school or the

Board receives federal financial assistance; and (4) she was excluded from participation in, denied

the benefits of, or subject to discrimination at, the school.  *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir.

1995).  An IDEA FAPE violation is not a per se violation of § 504; rather, a plaintiff must still prove

all elements of a § 504  case.  *Neena S. v. Sch. Dist.*, No. 05-5405, 2008 U.S. Dist. LEXIS 102841,

---

[17] As Skoczen stated, "[Stephanie] made significant progress.  And during breaks . . . she did not
regress and then have difficulty recouping the skills that she had prior to that vacation."  *Id.* at
568-69; *see also* Hr'g Tr. 286, 525-29, 565.

at *42 (E.D. Pa. Dec. 19, 2008) (citing *Ridgewood*, 172 F.3d at 253, *Andrew M. v. Del. County Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007)).  However, when a district court finds a child was provided with appropriate IDEA services, the court need not reach the § 504 claim. *See Westchester Area Sch. Dist. v. Bruce,* 194 F. Supp. 2d 417, 422 n.5 (E.D. Pa. 2002); *Christen G. v. Lower Merion Sch. Dist.*, 919 F. Supp. 793, 821 (E.D. Pa. 1996).

The Hearing Officer did not address the § 504 claim, finding Plaintiffs failed to provide separate evidence of discrimination under § 504 and Stephanie was eligible for IDEA services. Because Stephanie was provided with FAPE under the IDEA, and Plaintiffs have provided no evidence of Stephanie being subject to discrimination, Plaintiffs have provided no basis on which this Court could find a § 504 violation.  Because this court agrees with the Hearing Officer, it will dismiss Plaintiffs' § 504 claim.

Accordingly, this Court grants the District's Motion for Disposition on the Administrative Record and denies Plaintiffs' Motion for Summary Judgment.  An appropriate order follows.